UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

GARY FRANKLIN,

        Plaintiff,        Case No. 1:11-cv-36

v.        Honorable Robert J. Jonker

COUNTY OF KALAMAZOO et al.,

        Defendants.
_____/

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

## Discussion

I. Factual allegations

Plaintiff Gary T. Franklin presently is incarcerated at the Thumb Correctional Facility, Plaintiff was convicted by a jury of nine counts of first-degree criminal sexual conduct against both his wife and his infant daughter. He was sentenced by the Kalamazoo County Circuit Court on December 9, 1994 to nine prison terms ranging between 20 and 40 years and 30 to 60 years. In his civil rights action, Plaintiff sues the following Defendants: the County of Kalamazoo; the City of Kalamazoo; Kalamazoo Police Detective Joseph Keller; Police Captain Jon Uribe; Kalamazoo County Prosecutor Jeffrey Fink; Kalamazoo Circuit Judge Gary Giquere, Jr; and an unknown evidence custodian.

Plaintiff brings the instant action to obtain alleged DNA evidence from a toothbrush with which he was accused of assaulting his infant daughter. Plaintiff previously filed a motion in the Kalamazoo County Circuit Court seeking the DNA evidence under MICH. COMP. LAWS § 770.16, which was denied by Defendant Kalamazoo County Circuit Judge Giquere on October 29, 2010. In reaching his decision to deny the motion, Judge Giquere found that the request lacked merit both because the evidence had since been destroyed under an existing Kalamazoo Michigan Department of Public Safety evidence-disposition policy and because Plaintiff otherwise failed to meet the requirements of MICH. COMP. LAWS § 770.16(4)(b). (Ex. M to Compl., Page ID#47.) Plaintiff asserts that the denial of the evidence deprived him of his right to due process because it prevented him from providing all appropriate evidence in support his application for commutation of sentence, which he submitted to the Michigan Parole and Commutation Board on January 28, 2008 and which was denied on March 23, 2009. (Ex. I to Compl., Page ID#33.) Plaintiff also alleges that the DNA

evidence was lost or destroyed in bad faith, which he supports by allegations about improper evidence-handling that occurred prior to his conviction.

For relief, Plaintiff seeks declaratory and injunctive relief, together with costs and attorney fees.

II.     Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal*

plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

To the extent that Plaintiff claims that Defendants denied him a fair commutation review in violation of his due process rights, he fails to state a claim. A challenge to the fact or duration of confinement should be brought as a petition for habeas corpus and is not the proper subject of a civil rights action brought pursuant to § 1983. *See Preiser v. Rodriguez*, 411 U.S. 475, 484, 494 (1973) (the essence of habeas corpus is an attack by a person in custody upon the legality of that custody and the traditional function of the writ is to secure release from illegal custody). The Supreme Court has held that a state prisoner cannot make a cognizable claim under § 1983 for an alleged unconstitutional conviction or for "harm caused by actions whose unlawfulness would render a conviction or sentence invalid" unless a prisoner shows that the conviction or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus . . . ." *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994) (citation omitted); *see also Edwards v. Balisok*, 520 U.S. 641, 646-48 (1997). However, in *Skinner v. Lynn*, ___ S. Ct. ___, 2011 WL 767703, at **8-10 (Mar. 7, 2011), the Supreme Court recognized that a state prisoner's

due-process challenge to a state's denial of DNA evidence is not barred by *Heck* because the evidence, unlike exculpatory evidence that satisfies *Brady v. Maryland*, 373 U.S. 83 (1963), will not necessarily result in "immediate or speedier release." *Id.* at *10 (quoting *Wilkinson v. Dotson*, 544 U.S. 74, 82 (2005)). The Court reasoned that, whereas *Brady* evidence is, by definition, exculpatory, DNA testing "may yield exculpatory, incriminating, or inconclusive results . . . ." *Id.* Under *Skinner*, Plaintiff's success in the action would not necessarily demonstrate the invalidity of his continued confinement, so his action is not *Heck*-barred. In addition, the Supreme Court held that a federal court action based on a due-process challenge to a state's denial of DNA evidence is not barred by the *Rooker-Feldman* doctrine. *Id.* at *7. Nevertheless, although Plaintiff's action is cognizable under § 1983, it fails to state a claim as set forth herein.

To establish a procedural due process violation, a petitioner must prove that (1) he was deprived of a protected liberty or property interest, and (2) such deprivation occurred without the requisite due process of law. *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby*, 470 F.3d 286, 296 (6th Cir. 2006); *see also Swihart v. Wilkinson,* 209 F. App'x 456, 458 (6th Cir. 2006). Plaintiff fails to raise a claim of constitutional magnitude because he has no liberty interest in the commutation of his sentence. The Supreme Court has recognized that an inmate has no constitutional or inherent right to commutation of his sentence. *Ohio Adult Parol Auth. v. Woodard*, 523 U.S. 272, 280 (1998); *Conn. Bd. of Pardons v. Dumschat*, 452 U.S. 458, 464 (1981); *see also Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979) (holding that an inmate has no constitutional entitlement to release on parole). Clemency proceedings ordinarily are left to the discretion of the executive and "'are rarely, if ever, appropriate subjects for judicial review.'" *Woodard*, 523 U.S. at 280 (quoting *Dumschat*, 452 U.S. at 464); *see also Workman v. Summers*, 111

F. App'x 369, 371 (6th Cir. 2004); *Workman v. Bell*, 245 F.3d 849, 851 (6th Cir. 2001). While judicial intervention may be appropriate in extraordinary death penalty cases to ensure that the procedure is not entirely arbitrary, non-death cases do not implicate any federal interest. *See Woodard*, 523 U.S. at 289 (O'Connor, J., concurring with three other Justices and distinguishing *Dumschat*, a non-death case); *Workman*, 245 F.3d at 851.

Because Petitioner has no constitutional right to commutation of his sentence, a liberty interest is present only if state law entitles an inmate to clemency. States may create a protectable liberty interest through the enactment of regulations and procedural rules that limit the discretion of state officials in making parole or commutation decisions. *Greenholtz*, 442 U.S. at 7; *Hewitt v. Helms*, 459 U.S. 460, 471-72 (1983). However, the Supreme Court has recognized that such liberty interests ordinarily involve only those restrictions that place "atypical and significant hardship[s] on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *see also Woodard*, 523 U.S. at 283. "Thus, *Sandin* teaches that we should be hesitant to find a protected liberty interest in policy directives governing parole or commutation hearings, given that a change in the state's procedures typically will not cause a significant hardship on the inmate in relation to the ordinary incidents of prison life." *Moran v. McGinnis*, No. 95-1330, 1996 WL 304344, at *2 (6th Cir. June 5, 1996); *see also Woodard*, 523 U.S. at 283.

Under the Michigan Constitution, the Governor has the exclusive power to grant commutations and pardons:

> The governor shall have power to grant reprieves, commutations and pardons after convictions for all offenses, except cases of impeachment, upon such conditions and limitations as he may direct, subject to procedures and regulations prescribed by law. He shall inform the legislature annually of each reprieve, commutation and pardon granted, stating reasons therefor.

MICH. CONST. 1963, art. 5, § 14. The Governor's constitutional power to commute sentences is broadly discretionary. *See id.* In light of this discretion, the Sixth Circuit has concluded that Michigan prisoners do not have a state-created liberty interest in the Michigan Parole Board's procedures in recommending to the Governor whether a sentence should be commuted. *See Manning v. Unknown Parties*, 56 F. App'x 710, 711 (6th Cir. 2003); *Moran*, 1996 WL 304344, at *2; *Vertin v. Gabry*, No. 94-2267, 1995 WL 613692, at *1 (6th Cir. Oct. 18, 1995); *see also Goree v. Burt*, No. 05-CV-74592, 2006 WL 3832814, at *1 (E.D. Mich. Dec. 28, 2006) (rejecting the proposition that MICH. PAROLE BD. POLICY DIRECTIVE 45.12 creates a liberty interest in eligibility for sentence commutation). As the *Dumschat* Court concluded about Connecticut commutation procedures, a Michigan "felons expectation that a lawfully imposed sentence will be commuted or that he will be pardoned is no more substantial than an inmates expectation, for example, that he will not be transferred to another prison; it is simply a unilateral hope." *Dumschat*, 452 U.S. at 464 (footnote omitted). As a result, to the extent that Plaintiff intends to challenge the procedures under which he was denied clemency, he fails to state a due-process claim.

Plaintiff's assertion that he has a due-process right to access DNA evidence for use in the commutation hearing also fails to state a claim. The Supreme Court has recognized that the federal constitution does not provide a broad, freestanding right to access DNA evidence in the post-conviction setting. *See Dist. Atty's Office v. Osborne*, 129 S. Ct. 2308, 2312 (2009). "A criminal defendant proved guilty after a fair trial does not have the same liberty interests as a free man." *Id.* at 2320. Instead, states have "flexibility in deciding what procedures are needed in the context of postconviction relief." *Id.*. Where a state has created a post-conviction right to access DNA

evidence, a prisoner has only a limited liberty interest in the procedure. *Id.* at 2319-20. "Federal courts may upset a state's postconviction relief procedures only if they are fundamentally inadequate to vindicate the substantive right involved. *Id.* at 2320. The *Osborne* Court reviewed Alaska's judicially created procedures for accessing DNA evidence, which provides for discovery of DNA evidence when that evidence is newly available, material and diligently pursued. The Court concluded that Alaska's procedures, which tracked both federal law, *see* 18 U.S.C. § 3600(a), and the law of other states, were "not inconsistent with the 'traditions and conscience of our people' or with 'any recognized principle of fundamental liberty.'" *Osborne*, 129 S. Ct. at 2320-21 (quoting *Medina v. California*, 505 U.S. 437, 446 (1992).

In Michigan, postconviction access to DNA evidence is governed by statute. *See* MICH. COMP. LAWS § 770.16. Michigan makes DNA evidence available postconviction in certain circumstances: when DNA testing was done, the testing was incomplete, and current testing is likely to provide conclusive results. MICH. COMP. LAWS § 770.16(1)(a)-(c). In addition, if the convicted person is unable to discover the location of the DNA, he may file a petition in the circuit court seeking a hearing on whether the information is available, and the court may order the appropriate agencies to complete a search. After such search is completed, the circuit court is required to order DNA testing if the evidence is material to the issue of the identity of the perpetrator and a sample is available, the biological material was not previously tested or was tested when current technology was not available, and the identity of the perpetrator was at issue during the trial. MICH. COMP. LAWS § 770.16(4). In the instant case, after ordering a search, the court concluded that the evidence was not available and that the identity of the perpetrator was not an issue at trial.

As the Supreme Court concluded following consideration of the Alaska procedure, nothing about the Michigan procedure is inadequate to vindicate the interest involved. *Osborne*, 129 S. Ct. at 2320. The statute provides significant procedural protections to a convicted person who seeks access to DNA evidence. The procedural protections under the Michigan statute are comparable to those established in the federal statute, 18 U.S.C. § 3600, which the Supreme Court has cited with approval. *See Osborne*, 129 S. Ct. at 2320-21. Nothing in the Michigan procedure is inconsistent with a recognized principal of fundamental liberty. *Id.* at 2321. As a consequence, Plaintiff's procedural due process challenge to the denial of access to DNA evidence is without merit.

Moreover, where, as here, the evidence is now unavailable, it is difficult to imagine how Plaintiff can obtain the injunctive relief he seeks. As previously discussed, Plaintiff's due-process challenge to a state-court's denial of access to DNA evidence is not jurisdictionally barred by either the *Rooker-Feldman* or *Heck-Edwards* doctrines. *See Skinner*, 2011 WL 767703, at \*\*7-8. Nevertheless, as the *Skinner* Court noted, "'[w]hen there is parallel state and federal litigation,' state preclusion law may become decisive . . . .'" *Id.* at \*7 n.10. Here, to the extent that Plaintiff intends to challenge the state-court's finding that the DNA evidence is unavailable, his challenge clearly is barred by the doctrine of res judicata. The state court expressly found that no DNA sample was available for testing. (*See* Ex. M to Compl., Page ID#47.) "Federal courts must give the same preclusive effect to a state-court judgment as that judgment receives in the rendering states." *See Abbott v. Michigan*, 474 F.3d 324, 330 (6th Cir. 2007); *see also Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 80-82 (1984) (citing the Full Faith and Credit statute, 28 U.S.C. § 1738). "The doctrine of res judicata is employed to prevent multiple suits litigating the same cause of

action. The doctrine bars a second, subsequent action when (1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first." *Adair v. State*, 680 N.W.2d 386, 396 (Mich. 2004) (citing *Sewell v. Clean Cut Mgt., Inc.*, 463 Mich. 569, 575, 621 N.W.2d 222 (2001)). Michigan "has taken a broad approach to the doctrine of res judicata, holding that it bars not only claims already litigated, but also every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not." *Id.*

In the instant case, all three prongs are met. The state court unquestionably applied the Michigan statute and issued a decision on the merits. The state-court action involved the same parties or privies, and Plaintiff initiate the state-court action. And the state court expressly held that the DNA evidence was no longer available. As a result, Plaintiff is barred from relitigating the issue of availability in this action.

For similar reasons, Plaintiff is barred from asserting that the DNA evidence was lost or destroyed in bad faith is also barred by res judicata. Plaintiff made the identical claims to the state court, which found that the evidence had been destroyed in March of 1997, under the Kalamazoo Department of Public Safety's policy of mass destruction of evidence on old cases. (*See* Ex. M to Compl., Page ID#47.) That finding forecloses Plaintiff's claim that the evidence was destroyed for other reasons.

Further, to the extent that Plaintiff suggests that he has been denied substantive due process by the unavailability of the DNA evidence, his claim is foreclosed by the Supreme Court's decision in *Osborne*, 129 S. Ct. at 2322-23. In *Osborne*, the Court expressly declined to establish a freestanding substantive-due-process right to access DNA evidence in the postconviction setting.

*Id.* In reaching that decision, the Supreme Court recognized that its rejection of a postconviction substantive-due-process right of access to DNA evidence would foreclose a decision that there exists "a constitutional obligation to preserve evidence that might later be tested." *Id.* at 2323 (citing *Arizona v. Youngblood*, 488 U.S. 51, 56-58 (1988) (holding that, even in the preconviction context, a state's loss or destruction of evidentiary material, even if potentially exculpatory, only violates due process if it is done in bad faith). As a consequence, Plaintiff fails to establish a substantive due process right to the preservation of the DNA evidence.[1]

For all these reasons, Plaintiff's complaint fails to state a claim on which relief can be granted.

**Conclusion**

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

---

[1] The Court also notes that Plaintiff's allegations concerning the destruction of DNA evidence are unquestionably time-barred. State statutes of limitations and tolling principles apply to determine the timeliness of claims asserted under 42 U.S.C. § 1983. *Wilson v. Garcia*, 471 U.S. 261, 268-69 (1985). For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* MICH. COMP. LAWS § 600.5805(10); *Carroll v. Wilkerson*, 782 F.2d 44, 44 (6th Cir.1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, *1 (6th Cir. Feb. 2, 1999). Accrual of the claim for relief, however, is a question of federal law. *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996); *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir. 1984). The statute of limitations begins to run when the aggrieved party knows or has reason to know of the injury that is the basis of his action. *Collyer*, 98 F.3d at 220. Plaintiff's complaint is untimely. All of Plaintiff's allegations about bad faith concern the conduct of Defendants before his trial in 1994. Plaintiff had reason to know of the "harms" done to him at the time they occurred in 1994. Hence, his claims accrued in 1994. However, he did not file his complaint until December 2010, well past Michigan's three-year limit. Moreover, Michigan law no longer tolls the running of the statute of limitations when a plaintiff is incarcerated. *See* MICH. COMP. LAWS § 600.5851(9). Further, it is well established that ignorance of the law does not warrant equitable tolling of a statute of limitations. *See Rose v. Dole*, 945 F.2d 1331, 1335 (6th Cir. 1991); *Jones v. Gen. Motors Corp.*, 939 F.2d 380, 385 (6th Cir. 1991); *Mason v. Dep't of Justice*, No. 01-5701, 2002 WL 1334756, at *2 (6th Cir. June 17, 2002).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Notwithstanding the Court's dismissal of the action, however, the Court concludes that there exists a good-faith basis for an appeal based simply on the ongoing development of the law in this area, as most recently evidenced by the Supreme Court's decision last week in *Skinner*. Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated:    March 18, 2011       /s/ Robert J. Jonker   
                                                  ROBERT J. JONKER
                                                  UNITED STATES DISTRICT JUDGE